IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEROME JUNIOR WASHINGTON, | No. 4:22-CV-01269 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| MICHAEL KNAPP, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

DECEMBER 19, 2022

Plaintiff Jerome Junior Washington is a serial *pro se* litigator who is well known to this Court. He is currently incarcerated at the State Correctional Institution, Rockview (SCI Rockview), in Bellefonte, Pennsylvania. Washington filed the instant *pro se* Section 1983[1] action concerning alleged Eighth Amendment violations by two SCI Rockview officials. Washington's complaint raises a host of issues but only plausibly states a single claim for relief.

I.     STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[2] One basis for dismissal at the screening stage is if the complaint "fails to state a claim

---

[1]  42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]  *See* 28 U.S.C. § 1915A(a).

upon which relief may be granted[.]"[3]  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[4]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[5]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[6]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[7]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[8]  At step one, the court must "tak[e] note of the elements [the]

---

[3]  *Id.* § 1915A(b)(1).
[4]  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
[5]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[6]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[7]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[8]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

plaintiff must plead to state a claim."[9]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[10]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[11]  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12]

Because Washington proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[13]  This is particularly true when the *pro se* litigant, like Washington, is incarcerated.[14]

## II. DISCUSSION

Washington's complaint, like the other civil rights lawsuits he has filed, is unnecessarily verbose and difficult to follow.  His allegations are disjointed and disorganized, repeatedly shifting between unrelated events, prison policies, and purportedly wrongful conduct by various prison staff.  In the instant lawsuit, Washington sues two SCI Rockview officials: Unit Manager Michael Knapp and

---

9   *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
10  *Id.* (quoting *Iqbal*, 556 U.S. at 679).
11  *Id.* (quoting *Iqbal*, 556 U.S. at 679).
12  *Iqbal*, 556 U.S. at 681.
13  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
14  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

Superintendent Bobbi Jo Salamon.[15]  As best the Court can ascertain, Washington is asserting a claim of deliberate indifference to serious medical needs[16] and is attempting to do so through a theory of supervisory liability, as he repeatedly asserts that Defendants' "policies, practices, and procedures systematically violate" his Eighth Amendment rights.[17]

    Washington alleges that he is "seriously mentally ill" and has been housed in the Behavior Management Unit (BMU) at SCI Rockview since July 2020.[18]  He avers that he suffers from schizoaffective disorder, post-traumatic stress disorder, visual and auditory hallucinations, suicidal ideation, attention deficit disorder, bipolar I, and an anti-social personality disorder.[19]  The gravamen of his claim appears to be that his lengthy administrative-custody confinement in the BMU—which he alleges is contained within a restrictive "Level 5 Housing Unit"—violates his Eighth Amendment rights.[20]  Washington asserts that the conditions in the BMU, which include "near-constant isolation with little if any psychology specialist services or mental health treatment," create a substantial risk that his mental illness will be exacerbated and that his mental health will decline.[21]  These conditions, Washington maintains, are directly created by defendant Knapp in his

---

[15] Doc. 1 ¶ 2.
[16] *See, e.g., id.* ¶¶ 2, 12, 16, 32.
[17] *See id.* ¶¶ 2, 31.
[18] *Id.* ¶¶ 5-7, 17.
[19] *Id.* ¶ 6.
[20] *Id.* ¶¶ 8-16.
[21] *Id.* ¶¶ 13-16.

role as the supervisor and manager of the BMU, and Knapp is purportedly "deliberately indifferent" to them.[22] Washington also faults Knapp for failing to provide adequate mental health care to BMU inmates and for implementing a disciplinary system that does not account for inmates' mental illnesses or the impact that sanctions will have on prisoners like Washington.[23]

Washington includes a host of unrelated allegations regarding separate issues, many of which appear to be caused by unnamed correctional officers or prison management. For example, Washington alleges that male correctional officers frequently sexually harass, assault, and threaten other inmates.[24] He also asserts that correctional officers and prison administrators delayed processing "incentive items or phone cards" for prisoners.[25] Washington additionally contends that correctional officers encourage their subordinates to retaliate against inmates.[26]

As to defendant Knapp, Washington alleges that on June 17, 2022, Knapp only allowed the BMU lieutenant to collect legal mail during the 6 a.m. to 2 p.m. shift and this somehow affected one of Washington's other civil lawsuits.[27] At a different section of his complaint, Washington contends that Knapp made

---

[22] *See id.*
[23] *Id.* ¶¶ 10, 12, 15-16, 31.
[24] *Id.* ¶ 22.
[25] *Id.* ¶ 24.
[26] *Id.* ¶ 23.
[27] *Id.* ¶ 30.

"disrespectful remarks" to him[28] and placed him in a "hard cell" that was dirty and lacked appropriate bedding.[29]

Washington's complaint is deficient in numerous respects. The Court will address the sufficiency of Washington's claims in turn.

### A. Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[30] Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[31] Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[32]

Washington names Superintendent Salamon in the caption and introduction of his pleading only.[33] He does not assert any allegations against Salamon or even include her name in the defendant-identification section on the second page of his complaint.[34] Accordingly, Salamon must be dismissed for lack of personal

---

[28] *Id.* ¶ 29.
[29] *Id.* ¶ 32.
[30] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).
[31] *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).
[32] *Id.* (quoting *Rode*, 845 F.2d at 1207).
[33] *See* Doc. 1 at 1.
[34] *See id.* at 2.

involvement because there are no allegations that she was involved in any of the purported constitutional violations.

### B. Individual Capacity Claim

The gravamen of Washington's complaint appears to be a supervisory liability claim against Knapp for creating policies or practices that allegedly violated Washington's Eighth Amendment right to adequate medical care. A Section 1983 plaintiff can state a supervisory liability claim by plausibly pleading that a defendant, "with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused constitutional harm."[35]

As best the Court can ascertain, Washington is alleging that Knapp has a disciplinary policy or practice that does not properly account for the behaviors of mentally ill inmates and keeps them perpetually housed in the BMU.[36] Washington appears to claim that, as he works his way through the BMU's phases so that he can return to general population, Knapp will discipline him for behaviors related to his mental health problems and restart the BMU phase programming from the beginning.[37] Washington also asserts that Knapp has failed to provide adequate psychological services to BMU inmates and in fact has intentionally

---

[35] *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).
[36] Doc. 1 ¶¶ 10, 31.
[37] *Id.*

blocked those services.[38] According to Washington, Knapp's policies have resulted in Washington being held in conditions that create a substantial risk that his mental illnesses will be exacerbated and that his mental health will decline.

These allegations, taken as true, are sufficient to state a supervisory claim against Knapp for an alleged violation of Washington's Eighth Amendment right to adequate medical care.[39]

### C. Official Capacity Claim

Washington also sued Knapp in his official capacity.[40] However, official capacity claims seeking monetary damages from state officials are barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[41] This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[42] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its

---

[38] *Id.* ¶ 16 (alleging that Knapp "told psychological specialist services not to do their job or daily BMU rounds and not to provide adequa[te] mental health one[-]on[-]one services").

[39] *Cf. Clark v. Coupe*, __ F.4th __, 2022 WL 17246324, at *7-8 (3d Cir. 2022) (finding that mentally ill prisoner-plaintiff had plausibly stated Eighth Amendment claim against prison officials for housing him in solitary confinement for seven months, thereby posing substantial risk of serious psychological and physical harm).

[40] *See* Doc. 1 at 1 (caption).

[41] U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

[42] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

immunity with respect to claims brought under Section 1983.[43] There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[44]

Thus, any monetary damages sought by Washington in his official-capacity claim against Knapp are barred by Eleventh Amendment sovereign immunity and must be dismissed. Washington does seek injunctive relief in the form of "ensur[ing] that DOC prisoners / Washington receive constitutionally adequate mental health care."[45] Such a claim for prospective injunctive relief can proceed.

### D. Other Allegations

Washington's other unrelated allegations do not plausibly state a claim for relief and cannot be cured through amendment. As explained above, many of the allegations concern actions by prison officials who are not defendants in this lawsuit. And Washington's additional assertions against Knapp do not implicate constitutional violations.

Having a lieutenant collect legal mail only on the 6 a.m. to 2 p.m. shift and possibly missing delivery of legal mail on a single day does not in any way state a

---

[43] *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

[44] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

[45] Doc. 1 ¶ 33.

First Amendment access-to-courts claim.[46] Washington's allegations fall short for many reasons, not the least of which is that Washington himself pleads that he was given multiple extensions (and *months* of additional time) to file a brief in opposition to the pending motion for summary judgment in his other civil rights lawsuit. Washington also does not allege that he lost the chance to pursue a qualifying underlying claim, *i.e.*, a direct or collateral challenge to his criminal sentence or a conditions-of-confinement claim.[47]

As for Washington's allegations that Knapp was disrespectful to him and used profanity on a single occasion, those assertions do not state a constitutional claim either. In general, verbal harassment, taunting, and profanity, without any injury or a threat thereof, are insufficient to implicate a constitutional infringement under either the Eighth or Fourteenth Amendment.[48]

---

[46] *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (explaining that, to state an access-to-courts claim, the prisoner-plaintiff must allege"(1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit").

[47] *See id.*

[48] *See Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) (explaining that "verbal harassment does not give rise to a constitutional violation enforceable under § 1983"); *see also Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993) (collecting cases); *Manning v. Flock*, No. 1:11-CV-0293, 2012 WL 1078227, at *12 (M.D. Pa. Mar. 30, 2012) (collecting cases); *Graham v. Main*, Civil Action No. 10-5027(SRC), 2011 WL 2412998, at *24-25 (D.N.J. June 9, 2011) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner."); *Mohamed v. Aviles*, Civil No. 06-4794 (FSH), 2007 WL 923506, at *5 (D.N.J. Mar. 26, 2007) (collecting cases).

Lastly, Washington's claim that he was placed in a dirty cell without a mattress or bedroll on a single day does not state an Eighth Amendment conditions-of-confinement claim. Numerous district courts and courts of appeals have held that temporary denial of a mattress, even for multiple days and in combination with other deprivations, does not amount to a cognizable Eighth Amendment violation.[49]

## III. CONCLUSION

Based on the foregoing, the Court will dismiss Washington's complaint pursuant to 28 U.S.C. § 1915A(b)(1) with the exception of his Section 1983 supervisory liability claim against Knapp. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[49] *See Freeman v. Miller*, 615 F. App'x 72, 77-78 (3d Cir. 2015) (nonprecedential) (seven days without mattress, shower, soap, recreation, or toilet paper due to suicide risk not unconstitutional); *Adderly v. Ferrier*, 419 F. App'x 135, 139 (3d Cir. 2011) (nonprecedential) (seven days without clothing, toiletries, mattress, and shower was harsh but not a deprivation of life's necessities); *Stephens v. Cottey*, 145 F. App'x 179, 181 (7th Cir. 2005) (nonprecedential) (three days without a mattress and having to sleep on a metal bedframe did not violate Eighth Amendment); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (four days without clothing, mattress, or bedding not Eighth Amendment violation); *Maldanado v. Dep't of Corr.*, No. 1:13-CV-2249, 2017 WL 3034768, at *3 (M.D. Pa. July 18, 2017) (four or five days without mattress not a cognizable conditions-of-confinement claim); *Milhouse v. Gee*, No. 1:09-CV-2134, 2011 WL 3627414, at *12 (M.D. Pa. Aug. 17, 2011) (two weeks without a mattress did not violate Eighth Amendment); *see also Coleman v. Hodges*, No. 18-CV-1152, 2018 WL 6618459, at *6-7 (W.D. Pa. Nov. 30, 2018) (collecting cases regarding constitutional rights of pretrial detainees and denial of mattress).